And our last case for our argument is Rogelio Castro v. PPG Industries. Yes, please, counsel. I have this on a strap, so it goes on the back of my neck here. Okay. Good afternoon, your honors. May it please the court. I am Melissa Grant, and I represent the pelleted plaintiff Rogelio Castro. There are four claims, primary claims at issue here, and I'm going to address the class claims first. The certified on-premises growth rate claim was erroneously decided. It was decided on the basis that a Northern District Court case had held that requiring an employee to remain on the premises is not in and of itself a violation of the law. The Salley case, which is a Ninth Circuit case held just the opposite, that restricting an employee to the premises is in fact a violation of the meal break claim, and the Augustus case held that the obligations for meal breaks and rest breaks are identical. Now, even if you have to have an addition, an addition of control, which the District Court recognizes, that exists here. The policy states that they must remain on the premises and be available for productive work, and in fact Mr. Castro testified that he and other class members were restricted to the premises and were called back during their rest breaks for work. Is the inter-office correspondence, because Mr. Castro's declaration is, it supports individual claim, but you're saying that there's a company-wide policy, and the only thing I saw in the record was the inter-office correspondence document, which was undated, but was directed to all employees, all non-management employees. How much weight do we give to this undated inter-office memo, essentially, in comparison, given that the company points to their official policies as not including that requirement? I appreciate the question, Your Honor. The defendant, respondent, did not dispute that the policy included be available for productive work. There was no evidence that that wasn't the policy. They emphasized that simply holding somebody to the premises was not a violation of the law, but they completely did not respond to the fact that their policy does, in fact, require them to be available for productive work, and it's important to note the word productive. It's not just being required but not necessarily put to work. It's actually doing work, productive work, during the rest break period. I hope that answers your question. Was there anything in the record about this inter-office correspondence? If certain people saw the memo or evidence of who it was sent to, is there anything in the record? Yeah, the memo itself is sent to all employees, and when the- But aside from that, was there anything in the record saying employees saw this memo? I do believe that the PMQ for human resources did verify that that was the policy of the company when asked about that document, and if you would like me to find the page in the record for that, I will do so and mention it on rebuttal, and I should have said I want to reserve four minutes for rebuttal. Please watch the clock. Did you also address when you were asked to address Article 3 standings, can you address that issue? As to the on-premises rest break or the wage statement? The wage statement and the meal break waiver. Okay. As to the wage statement, which is a certified claim as well, the wage statement under MAGARIA and under TransUnion, TransUnion discussed an informational violation which results in downed- what was the phrase? Well, they say that causes no adverse effects, can't satisfy Article 3. Yes, but there are. So, are there adverse effects? Absolutely. What are they? Absolutely. As the MAGARIA case recognized and as the case law in California recognizes, an employee has a concrete interest in a complete and accurate wage statement. The violation of the code is a failure to put any of the nine items that are required to be in the wage statement, but the concrete interest is having that toolbox, the accurate and complete record of all the information regarding your pay, including where to get your information, where to service the process. Yes. In the MAGARIA versus Walmart, the issue there was they didn't have all the information, so the court said employees can't tell if they're being shortchanged. There's no way they can figure that out, and that itself is concrete. Here we're just talking about the address of the employer, and if anything, it seems like listing the parent company that does the payroll would probably be actually more appropriate. If you have a question about your W-2 statement, you go to your local facility, probably no one there is going to know anything about it. Or perhaps I go to corporate. I'm just trying to understand what the actual concrete harm is here. All right. I appreciate that. First of all, the statute defines it, as the MAGARIA case recognized. The statute in 226E-2B defines a concrete injury, the suffering injury, as the absence of the information and the inability to promptly and easily discern that information from the wage statement itself. With trans-unions, you said, well, it doesn't matter what Congress or, you know, say legislature says it's a harm. It has to be something for Article 3. It has to be something more concrete. Well, let me ask you. If they know they work in Sylmar, and the wage statement says your employer is located in Pennsylvania, they'd be totally confused. Any reasonable person, and the standard is reasonable under the statute, it's an objective standard, would say, what? What? I don't understand. They attempt to serve process in Pennsylvania, and that's not where they're supposed to serve it. They're supposed to serve it in Sylmar. So it's total confusion. And was there evidence of someone trying to serve process and being misled by that address? No, there was not in the record. However, the Magadia case very clearly says the material risk of harm. It's not just actual harm, and especially when the statute itself defines what the injury is. So in your view, the actual harm or the risk of harm is that someone might try to serve process on Sylmar in Pennsylvania, is that? Among other things. Among other specific things. Well, Mr. Castro testified. He read the wage statement, and it said the address in Pennsylvania. And he was asked, where do you think your employer is located? He said, I thought Sylmar. He was obviously confused by his own testimony. Is there any other harms of confusion and the possibility of serving process at the wrong place? Yes. The statutes require the employer to maintain their personnel records for three years. An employee is supposed to be able to, a current and former, show up at the employer's office and get their personnel records. That's not supposed to be in Pennsylvania. State law requires you have a local California address. In addition, to address your question, Judge Lee, the notion that it could be the parent is directly contrary to the express plain language of the statute, which requires the name and address of, quote, the legal entity that is the employer. It does not say, well, it could be the parent if the parent has the payroll department. It's literal, exactly what it says. Can you also address the meal break? So, in that case, Mr. Castro didn't sign the meal break waiver at issue. So, even though he could bring PAGA claims, the question is, what would be the basis of Article III standing for that? I recognize the question, Your Honor. TransUnion in Magadha came out four and five months after this case. The record was not fully developed on the meal waiver issue for the simple reason that the only evidence in the record is contradictory. Ms. Holman, the PMQ for Human Resources, testified that she looked in the personnel file and didn't find a waiver. She later, in her errata to her deposition, said, it's either in the personnel file at HR or the payroll department. So, we would ask that the court remand for the purposes of developing the record and addressing the issue of Article III standing as far as the meal break waiver claim is concerned. The wage statement, I believe I've addressed. The drug testing claim, this is another claim where the court failed to address the two standards in the law. There were two standards for determining whether or not an employee or an individual is, in fact, an employee. One is the common law notion of contract. Now, we argued that there was an offer and the requirement of acceptance prior to the drug test. And, therefore, there was a common law contract. Now, the district court rejected that. We still disagree with that. But the court did not assess the second standard we asserted, which is control. Didn't even mention it. The idea that the, what we call the employee, was under the control of PPG or SILMAR. At the time they went under the drug test, PPG or SILMAR decided exactly where, when, how, what the test would be, and, in fact, controlled the results of the test. It was strictly for the employer's benefit, as the Department of Labor recognized in its statement, which we quoted in our papers. It said, when you require an employee or a new hire to go through a drug test, that is, in fact, control time that you need to pay for. So, if your argument was correct, how could an employer ever condition and offer unemployment on a drug test? Well, there would be a couple of ways to do it. Although, we would say that they really shouldn't escape the liability, because it is control. The way they could do it and avoid the contract argument is to say, point blank, your offer and your application for unemployment is conditional on passing a drug test. You must give us proof that you passed a drug test. Go get one. You go pay for it. You decide where you go for it. Prove it with your application. That's all they had to do. And then, in fact, the control test wouldn't apply either, because the employee would control the drug test and have control even of the results. I hope that answers your question, Your Honor. The thing that I also wanted to mention with the wage statement, the trial court said something very curious, and it sort of is directed to what I said to you, Judge Lee, in answering your question. The trial court said the address was ambiguous. The address wasn't ambiguous, and even if it was, that was not the issue, because the defendant conceded that the address was the wrong address. What is plain is that it has to be the address of the legal entity that is the employer. That is not ambiguous. And the court ignored that fact and said, well, it's ambiguous that it was the address. It could have been the parent. That is disavowing the language of the statute. Are there any other questions you have at this point? I would like to reserve my time, although there's more than I anticipated for rebuttal. You may save your time for rebuttal. I don't think there are any more questions right at the moment. Thank you, Your Honor. Thank you. May it please the Court, good afternoon. My name is Rob Pritchard, Counsel for Appellees. I'll start with standing. Mr. Castro had standing with respect to his wage statement claim under the principles of Magadha. I'll get to that in a minute. He had standing with respect to his meal period paga claim, but he lost standing to appeal when he voluntarily dismissed his individual meal period claim. Before turning to TransUnion and Magadha, I'd like to start with the discussion about Catholic League for Religious and Civil Rights versus San Francisco. In that case, the en banc majority recognized that standing is not about who wins. It is about who is allowed to have their case heard. And it cautioned that the standing analysis cannot be used to disguise a merits analysis. So the fact that Mr. Castro may not have been able to demonstrate that he actually experienced true harm because of the address of the parent being included on his wage statement is a merits question. He alleged that he experienced injury sufficient to satisfy Article III standing with respect to that claim. In Magadha, even though the wage statement claims lacked merit and were ultimately dismissed by this court, the plaintiff had standing. Magadha held that the failure to include required information on the wage statement violated a concrete interest in receiving accurate information about wages and presented a material risk to harm sufficient to establish Article III standing. That is consistent with TransUnion, which recognized the existence of intangible injuries. In that case, the named plaintiff lost out on the opportunity for financing for an automobile. But 1,800 other individuals just had their name sent out by TransUnion to another entity with no evidence of any actual tangible adverse harm occurring to any of them. Nonetheless, the Supreme Court held that with respect to those 1,800 people, the intangible injury of reputation of harm was sufficient to establish Article III standing for them. With respect to the individuals where the false information was never communicated, the court said no, there was no Article III standing as to them. That's right. So the 1,800 people, their name was on a list that was communicated, but there was no evidence that anything ever came of it. And Spokeo cautions us to look at those harms that are akin to those that are in the common law. So explain how the harm here falls into the category that Spokeo indicated were cognizable for Article III purposes. Sure. Well, in this case, in particular, Mr. Castro, in his complaint, identified some of the injuries that would occur to him because of the information. Now, this is a challenging argument because the address was correct, and the address was useful to Mr. Castro and the members of the class. So on the merits, this is a very tough sell for Mr. Castro. As the district court found, the address was actually a helpful address. But the allegation, which is the linchpin for the Article III standing question, is that Mr. Castro said that he was confused about the true identity of his employer. He had an ability to contact the correct employer for various reasons, including filing administrative or judicial claims, pursuing claims for unemployment. You keep referencing allegations, but we're at summary judgment. So I guess I'm not quite understanding. I mean, you have to have standing at all stages of the case. We're at summary judgment, and there's nothing in the record to show that the plaintiff suffered some sort of adverse consequence from this error in the information in the pay stub. It is an argument that Mr. Castro disputes in his reply brief, saying that that's not true. But this is still an issue about merits versus standing. If that argument was the standard, then we would get to the jury trial on the special verdict form. One of the questions would be, what injury did the plaintiff suffer? And if the jury says none, the judge would stop the proceedings and throw everyone out of the federal courthouse. That can't be the standard. We have to look at what the allegations are. What is it that the plaintiff is trying and attempting to redress? And in this case, Mr. Castro was attempting to redress the confusion and inability to pursue claims, inability to properly obtain an employment comp, and all of that because of this address. And also hypothetical, right? Because we don't have any information that he actually had a claim that he wanted to pursue and that he tried to and he couldn't do it because the information was misleading or confusing. Like, it's just all hypothetical. Just as in Medallia. In that case, the plaintiff said, I was confused by the rates and the hours, and the court said, well, you have standing to complain about that confusion, but there is no confusion because the rates and hours are correct. So there was no actual injury in Medallia either, but there was an allegation that the alleged violation would create an intangible injury, and that was sufficient to at least get to the merits of the question. But in Medallia, again, they didn't know if it was accurate or not, the wages, so they didn't know if they were harmed even. I mean, here, I mean, they know where they work. That's one thing I'm curious about. If they're a contract worker somewhere, you know, remote teleworker, they don't know where their employer is. I mean, they know. They go to the Selmar facility. They know where their employer is. Now they have both. They have where they work and they have their corporate address. It's hard to see how he was harmed in any way. Well, to be clear, on the merits, the district court was correct. There was no harm. Because there was no violation, the address that was provided is an address of the employer and of, there's lots of case law defining of in California, and it means associated or connected with. So the Pittsburgh address is an address of Selmar. So the address was correct under the law. It met the requirements of Subsection 8. And no one was hurt because there was no violation. So let's think about if California law didn't require the address of the employer on the wage statement. So there's no address at all. And is the employee harmed by, would they have a cause of action because there was no address at all? So that raises, in the manpower case, I think the court said that that would be a violation. No, there's no violation. It would have to be a violation of some common law standard, right, because there's no, in my hypothetical, there's no California statutory requirement to have an address on the wage statement. But so, for example, in a transunion, if there is a reputational harm, you may have a claim under common law cause of action. So here, if there was no address at all on the wage statement, would he have a cause of action for some type of harm? Would he be harmed by that? If there was no requirement to provide the address. There's no requirement, and there's no address. Like probably most employers who put the address on the wage statement, but there's no legal requirement. They didn't do so in this case. Then there's no cause of action at the outset. Is there any harm? Could he claim that there was some sort of harm? A claim of, in the absence of a cause of action, it's hard to know what context that would occur in. But in theory, even as the legislative history pointed out, there are lots of opportunities for injury associated with an employee who doesn't know the legal address of their employer. There can be confusion about how to obtain a W-2. There can be other tax consequences, pension benefits. Challenges to how my wages were calculated. Is this a harm that was close to the traditional sort of common law harms that Justice Alito points to in Spokane? None that he listed in Spokane, Your Honor. I do think the TransUnion does merit a revisitation of some Ninth Circuit precedent. In particular, Mr. Castro cited the Salih case, and I repeated a reference to it just here now, Ninth Circuit 2018 case, that adopted the Section 226 deemed to be injured, deemed to suffer injury language from 226. And I think TransUnion makes clear that a state, even a federal statute, cannot deem injury sufficient to satisfy Article III standings. The court probably should revisit its decision in Salih. But in this particular case, the plaintiff alleged that he experienced the types of injuries associated with the wage statement sufficient to at least allow this claim to proceed to the merits assessment, where he lost because the address was, in fact, the address of the legal entity that was the employer. Could you turn to the rest break issue? It's correct, as the opposing counsel says, that you agree that employees on the rest breaks must be available for productive work, and that's the policy of the employer. That's what the interoffice correspondent said. There was evidence in the record sufficiently sufficient from a summary judgment perspective that it should be considered by the district court in evaluating the motion for summary judgment. But the two sentences, employees must remain on the premises and employees must be available for productive work, are mere reflections of the reality of what a rest break is. As Augustus clarified with respect to the premises question, and as multiple district courts have found both before and after Augustus, on-duty premises requirements for rest periods are reasonable and are consistent with the requirements to provide a duty-free rest break. Then making the inferences of the laymost favorable to Mr. Castro, doesn't available for productive work sound like you must be on call during your rest break? Not at all. Augustus says it's not allowed. No, not at all. The available for productive work is also recognized in Augustus as a reality of rest breaks. Augustus specifically recognizes that rest breaks can be interrupted, and a consequence of an interrupted rest break is that the employee needs to be provided another rest break that satisfies the requirements of the code, or paid the one-hour rest break premium if they're not. So right in Augustus, the Supreme Court recognizes two features of rest breaks. You don't have enough time to really get very far, so on-premises requirements are okay. And number two, it's okay that an employee might be called back to perform productive work during their rest break, the consequence of which would be providing another rest break or paying the one-hour premium. The difference with Augustus, of course, is that in Augustus, the employees were security guards, whose whole job was to be vigilant, to have their radios on, to be alert to the issues that might arise in the course of their shift. And so just because they were technically deemed to be on a rest break, the fundamental nature of their job never changed. This is a completely different scenario. Mr. Xavster worked in an industrial site. When he walked away from his workstation, which he admitted he did, which the evidence is undisputed, that employees walked away from their workstations. They could go outside, go to their cars, walk around the facility, go to the rest, the break rooms. Yes, if a machine broke and there was a call, we need you back because something happened and we need to address it. The break would be interrupted. It wouldn't count as a break. He would then be entitled to another break. If he didn't get that other break, he'd be paid the hour rest period premium. So Augustus acknowledges that that's totally okay. So the sentence in the memo that says that employees must be available isn't an on-call scenario in the way that it was in Augustus, where the employees were – that was actually their job to be vigilance to the radio and alert to things that might happen. So the evidence was that there were occasional interruptions to breaks, and when they happened, the employee was able to take another break or was paid the premium. And so it's a totally different scenario. These two sentences merely reflect the reality of a rest break and not any particular exercise of control over the employee. I would like to address the standing issue with respect to the PAGA claim of failure to provide meal periods. In that case, unlike in Medaglia – so in Medaglia, the plaintiff was held to have lackstanding to bring the PAGA claim based on meal period violations because he'd never suffered any injury pertaining to meal periods. He was an aggrieved employee because of the wage statements, which, again, were correct. And so ultimately he lost all the merits, suffered no injury, but he at least alleged enough to get Article III standing to get to the merits discussion. But that wasn't enough, according to this court, to let him pursue the meal period claim, which conflicts with Kim V. Reeves in terms of how the state courts might handle the questions of standing that are given by the PAGA statute versus how the federal courts might look at it. Because in Kim V. Reeves, the California's group of courts held that you can have standing to pursue a claim if you're aggrieved in one way without allegedly record violations occurring in other ways. But this case is different. Here, Castro had an individual claim for failure to provide meal periods. He alleged that defendants failed to provide him with meal periods in lots of different ways, articulated in Target 79-381 of his complaint. A PAGA claim must be based on the violation of the labor code, and here he alleged an individual violation of the labor code based on 6267 and 512 and 1198. So he had standing to pursue his PAGA claim based on alleged meal period violations. The fact that he didn't himself sign a meal period waiver is of no consequence. It doesn't deprive him of the standing to pursue the claim based on the failure to provide meal periods to himself and to others. The waiver is just one of many theories that Mr. Castro was pursuing at the trial court. I do take issue with something my counsel, my co-counsel, or the opposing counsel just said a minute ago about requesting remand on this issue, about whether he signed one on page 43 of their opening brief. Mr. Castro said, Plaintiffs never signed a meal break waiver. That has been an accepted truth of this case for summary judgment and on appeal from the beginning. So Castro has standing to bring his PAGA claim based on the failure to provide meal periods. He has standing under PAGA, but our question is whether he has standing under Article III if he himself was not injured for this particular claim. The claim is the failure to provide meal periods. He has a claim for failure to provide meal periods. The additional penalty provided by PAGA, he has a claim for that because he alleges, and alleged all the way up to the last day of the district court proceedings, that he was not providing meal periods. So to the extent they characterize the claim as if the meal break waiver is invalid because it was prospective, which is how they characterize it, you would re-characterize it in a different way, is that what you're saying? Absolutely. That's not a claim. It's not a violation to have a form that allegedly isn't allowed to be used. If the defendants had given everyone and forced everyone to sign this form, but then provided all the meal periods and all the second meal periods, there would be no claim under the labor code. The meal waiver is valid under California law in some context. California law's meal waiver is California labor code. And so I thought the argument was this waiver, this particular waiver, was invalid, and therefore the waivers were invalid, and therefore there was a meal break violation. Those are all the theories. I mean, so under PAGA, even though a plaintiff doesn't have to meet all 23 standards. You're saying at some level of generality he has standing. He has standing because he alleged that the company, in other ways, failed to provide him with meal periods. So the claim is a claim for failure to provide meal periods, not a claim that there's a form that shouldn't be used, which on the merits also should fail for different reasons. So for those people who did sign meal waivers, how could he bring their claim since he's not similarly situated? Well, the standard. If, say, everyone at the company other than Mr. Castro signed a meal waiver and the waiver is valid, then there's no claim at all. So it's only if the waiver is invalid that there would be a claim. And so he's sort of out of the picture, right, because he didn't sign any of the waivers. The claim is a claim for failure to provide meal periods. How the plaintiff meets his burden of proof at trial to establish that either he or the aggrieved employees were victimized or were aggrieved by the alleged failure to provide meal periods is the trial plan. It's how he's going to prove his claim. But we have to define standing by what the claim is, and the claim is that he wasn't provided meal periods. And he alleged that all the way up until the day he voluntarily dismissed his meal period claim. At that moment, Mr. Castro did lose standing to appeal the court's summary judgment order, and the court should dismiss the appeal with respect to that claim but leave the district court's judgment intact because at the time the district court entered summary judgment, Mr. Castro did have a meal period claim. He was going to attempt, as many plaintiffs do, to meet his burden of proof both as to himself and to other aggrieved employees through lots of different types of evidence, only one of which was that the form was unlawful or that the form triggered the employer to not provide meal periods to the people who were in control of our shifts. But that was just one of the paths he was going to take. We obtained summary judgment as to that path because it's legal to have prospective meal period waivers, as many, many courts have found. All of Mr. Castro's arguments on that issue just conflate the issue of what Pranker said was the employee's right to choose not to take a meal break, which is different from a waiver. We agree that if an employee was scheduled to work an eight-hour shift, the employer that day would have to provide a meal break to that employee. The employee at that point isn't waiving their break. They're choosing, if they choose, not to take the break. That's not a waiver. It's not what we're talking about here. The Labor Code specifically authorizes an employer and an employee by mutual assent to have the employee waive the right to be provided a break. That's a totally different thing. And that waiver, as courts have long held, can't be prospective. There's very important scheduling reasons. It's for the benefit of the employee and the employer. Let's say an employee is scheduled to work 10-hour shifts, but they punch out at 10 hours and 1 minute. Well, under the law, they would have had to have provided that second meal break in the absence of a waiver. And so in order to address that sort of thing, employers and employees are allowed to agree in advance that there would be no obligation to provide the meal break in that scenario. And that's what happened here. But as for standing, even in the absence of the form, Mr. Castro alleged all the way up until the day he voluntarily withdrew his meal period claim that the company failed to provide him meal periods in lots of different ways. So he had standing to bring that claim, which is a claim for a violation of P267 and 512, which supports the additional penalties. With respect to the wage statement claim, that can be addressed in the context of standing. But there is no violation because the Pittsburgh address is an address of the employer. It's connected to the employer. And there was ample opportunity. And that's where all of the company's payroll issues and HR issues were actually handled out of the Pittsburgh address. In fact, Judge Lee, I agree with your earlier comment that the Pittsburgh address was actually a superior address to include on the wage statement than the Selmar address because that's where things would have been forwarded to anyway if somebody had written a letter about their wages to Selmar. It would have been sent on to Pittsburgh. So I think it's pretty clear, and all the cases are clear on this issue, that we'd be entitled to some redressment on that claim in the course you defer. Finally, with respect to the drug test issue, this is a very simple claim. The plaintiff was not an employee at the time he got his offer letter. The offer letter explicitly said that the offer was contingent upon a successful passage of the drug test. If you adopted Mr. Pastra's theory in this case, you would have to pay an individual who failed their drug test for the time it took them to get the drug test. You'd have to pay an employee for reading an arbitration agreement or a confidentiality agreement that they refused to sign when it was clear that those types of things were conditions of hire. The offer letter is clear, and Selmar's judgment should be affirmed on both the drug test claim and the other claims as well. Thank you. Thank you for your argument. The other side has some time for rebuttal. Thank you, Your Honors. First, I want to cite to the record the exact page where the HR PMQ testified that the interoffice memorandum was part of their policy. We were talking about the interoffice memorandum, Exhibit 20, and it's the document that actually went to employees regarding the policy question. Answer, it was a document that helped explain it to the employees, yes. So, it was what they gave the employees to explain to them what their policy was regarding meal and rest breaks. That is at ER 0268. I have to say, with all due respect to my colleague here, that he was creating facts about Augustus, which were just out of whole cloth. Augustus never held that there's no rest break violation if you pay for it, because you don't give it to them. That is, by definition, a violation. As a matter of fact, there are multiple cases that have held, including Kirby v. Emos, a California appellate court decision, which, a Supreme Court decision, excuse me, which held that the violation under 226.7 is the failure to provide a meal or rest break or recovery break also. And the remedy of being paid for is simply the remedy, not the violation. Also, Magadia and the Aguilar case recognized that a violation, I should say the Kim V. Rimes case, the most recent California Supreme Court case, and I can get you the site after the hearing. I don't have it handy right here. But that held that an individual does not have to have an actual claim. In Kim V. Rimes, the plaintiff settled their individual claim. Absolutely settled. It was gone. No more damage, no more harm. And the court said they still had the violation committed against them. Excuse me, I get very dry. The aggrieved employee by PAGA is defined by the statute as an employee of the alleged employer against whom the alleged violation was committed. It's not defined by harm or injury. That's a PAGA claim. Correct. Not an Article III issue. Correct. But if we go back, as my colleague agrees, he had standing under Article III for his meal claim and for his rest claim. He didn't even challenge that, and the court did not ask about the rest break claim. He was deprived his rest break. He was told he could not leave the premises. So there is no Article III question about his rest break claim in particular. Okay. The other things he stated, he kept reiterating that the address was the address of the employer. That is an out-and-out contradiction of the record. Again, the PMQ for Human Resources, Ms. Ullman, stated in paragraph 6 of her declaration, which was on, oh my, I forgot that page. Excuse me. That is a DR-407. That the employer was not PPG. That the address in Pennsylvania was the employer's, excuse me, PPG's address. That the employer is, in fact, Sylmar. As a matter of fact, that's repeated almost as a disputed fact throughout both separate statements of undisputed facts. So the notion for the counsel to stand up here now and say the address was, in fact, the employer, is contrary to the evidence in the record in their own PMQ's testimony. Also, the notion that you can ignore the fact that an injury is deemed to have been suffered, that counsel stated, again, belies the law. The statute says, point blank, 226E2B, that suffering injury is the failure to include the required information and the inability to promptly and easily determine that information from the wage statement itself. And that promptly and easily is defined as a reasonable person. But your time's running out, so can you address your opposing counsel's argument about meal break? I mean, what's your claim? Is it a meal break claim, a meal break waiver claim? And then also his claim that Mr. Castro dropped his individual claim and therefore doesn't have sanity. Can you address those two points that you raised? Sure. He's correct. The claim is the failure to provide meal breaks. And a waiver is an affirmative defense. That's why I said the record is confused and not complete, because their PMQ testified that a meal waiver could be at HR, it could be at the payroll department, or it could be in the personnel file. And all she checked was the personnel file and found no evidence of it in there. That's why the record needs to be further developed. And then your second question, I'm sorry, Your Honor. That he had, Mr. Castro had dropped his individual claim and doesn't have sanity. Two things about that. One, the Kim V. Ryan's case says you don't have to have an individual claim for damages. If you settle the claim and you no longer have the claim, you still can bring a claim for standing under PACA. He also dismissed the claim preserving his right for appeal of the summary judgment question. So he did not dismiss the issue of whether or not he got meal breaks and may have the affirmative defense of a valid meal waiver. I hope that answers your question. Okay. I see my time is almost up. I also want to point out that Augustus did not say you can stay on the premises and not be held to have violated the law. It said point blank you cannot tether someone to a specific location and require them to be available to work. It also said they must be allowed to take a walk. Go away five minutes. Practically speaking, that's all they could go away. They have to come back within five in order to meet the ten-minute requirement. And Ridgeway, which is a Ninth Circuit case, recognized that's what Augustus held, that you can restrict them to five minutes away, but you can't restrict them entirely to ten minutes away for their entire rest break. I see my time is up. I thank you very much for the opportunity. Thank you. Thank both sides for their argument. The case of Rogelio Castro v. PPG Industries is submitted. And we're done for this session and for the week. All right.
judges: IKUTA, LEE, FORREST